AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Red iPhone<br>2026250100019101-0002<br>("Subject Device 1") | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.   26mj2577 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC Sec. 371 | Conspiracy to Bulk Cash Smuggle |
| 31 USC Sec. 5332(a)(1) | |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Rae Ocampo, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date:    April 30, 2026

_____
*Judge's signature*

City and state:   San Diego, California          Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

## **ATTACHMENT A-1**

**A.   PROPERTY TO BE SEARCHED**

1.      The following property is to be searched:

   a.      *Cellular Telephone*: red iPhone cellular telephone, seizure No. 2026250100019101-0002, used by Lauren Amanda ERDAHL ("ERDAHL") and seized from a vehicle used by ERDAHL ("**Subject Device 1**").

**Subject Device 1** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, San Diego, CA 92101.

**ATTACHMENT B-1**

**A.    ITEMS TO BE SEIZED**

1.    Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

2.    The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **February 6, 2026** [date of ERDAHL's first border crossing in the Vehicle] up to and including **April 25, 2026** [date of ERDAHL's arrest]:

    a.    tending to show planning, coordination, and efforts to transport bulk cash over the border between the United States and Mexico;

    b.    tending to identify accounts, facilities, storage devices, and/or services, such as email addresses, IP addresses, and phone numbers, used to facilitate the transportation of bulk cash over the border between the United States and Mexico;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the transportation of bulk cash over the border between the United States and Mexico;

    d.    tending to identify travel to or presence at locations involved in the transportation of bulk cash over the border between the United States and Mexico;

    e.    tending to identify the user of, or persons with control over or access to, **Subject Device 1**; and

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of violations of Title 18, U.S.C., Sec. 371 and Title 31, U.S.C., Sec. 5332(a)(1) – Conspiracy to Bulk Cash Smuggle.

## AFFIDAVIT

I, Special Agent Rae N. Ocampo, being duly sworn, hereby state as follows:

**A.      ITEMS TO BE SEARCHED**

1.      I submit this affidavit in support of an application for a warrant to search the following electronic devices:

a.      *Cellular Telephone*: A red iPhone cellular telephone, seizure No. 2026250100019101-0002, used by Lauren Amanda ERDAHL ("ERDAHL") and seized from a vehicle used by ERDAHL ("**Subject Device 1**")

b.      *Cellular Telephone*: A black Samsung cellular telephone, seizure No. 2026250100019101-0003, used by ERDAHL and seized from a vehicle driven by ERDAHL. ("**Subject Device 2**")

(collectively, the "**Subject Devices**"):

as further described in Attachments A-1 through A-2, and to seize evidence of crimes, specifically violations of Title 18, U.S.C., Sec. 371 and Title 31, U.S.C., Sec. 5332(a)(1) – Conspiracy to Bulk Cash Smuggle, a felony, as further described in Attachments B-1 through B-2. The requested warrant relates to the investigation of ERDAHL, and presently unknown co-conspirators, for bulk-cash smuggling. The **Subject Devices** are currently in the custody of Homeland Security Investigations and located at 880 Front Street, San Diego, California 92101.

2.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Subject Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

/ /

/ /

/ /

**B.    TRAINING AND EXPERIENCE**

3.    I have been employed as a Special Agent with Homeland Security Investigations ("HSI") since December 2022. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.    During my tenure with HSI, I have participated in investigations of various bulk cash smuggling organizations and controlled substance trafficking organizations, including those operating within and through the Southern District of California. During the course of my duties, I have (a) worked as a case agent, directing specific financial and controlled substance-related investigations; (b) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking bulk cash and controlled substances; (c) written and participated in the execution of search warrants related to financial and controlled substance investigations; (d) made numerous arrests for financial and controlled substance related offenses including bulk currency smuggling out of the United States; and interviewed criminal defendants, witnesses, and informants in furtherance of investigations into illegal bulk currency smuggling and controlled substance trafficking. Through my training and experience, and conversations with other law enforcement officers experienced in bulk cash and controlled substance smuggling investigations, I have gained a working knowledge of the operational habits of bulk cash smugglers, controlled substance traffickers, and those associated with the smuggling subculture.

5.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for bulk-cash and controlled substance smugglers to work in concert, and to do so using cellular telephones to maintain communications with co-conspirators to further their criminal activities. This is particularly true in cases involving large quantities of bulk cash. Typically, people responsible for transporting bulk cash over the border between the United States and Mexico are in telephonic contact with co-conspirators prior to, during, and after

the transportation of the currency. These communications often involve instructions being passed to couriers who are exchanging currency such as general locations to travel to, a specific meeting location, a description of who they will meet, and instructions on what to do after their meeting. Conspiracies involved in the smuggling of bulk currency generate many types of evidence including, but not limited to, cellular telephone related evidence such as voice mail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators.

6.     Based upon my training, experience, and consultations with law enforcement officers experienced in bulk-cash smuggling and controlled substance trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s))  can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in bulk-cash smuggling may yield evidence:

a.     tending to show planning, coordination, and efforts to transport bulk cash over the border between the United States and Mexico;

b.     tending to identify accounts, facilities, storage devices, and/or services, such as email addresses, IP addresses, and telephone numbers, used to facilitate the transportation of bulk cash over the border between the United States and Mexico;

c.     tending to identify co-conspirators, criminal associates, or others involved in the transportation of bulk cash over the border between the United States and Mexico;

d.      tending to identify travel to or presence at locations involved in the transportation of bulk cash over the border between the United States and Mexico;

e.      tending to identify the user of, or persons with control over or access to, the **Subject Devices**; and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## C.    FACTS SUPPORTING PROBABLE CAUSE

*CBP Officers find $131,680 USD in Erdahl's gas tank during Otay Mesa POE outbound inspection*

7.      On April 25, 2026, at about 6:05 p.m., ERDAHL approached the outbound inspection area at the Otay Mesa, California Port of Entry.   ERDAHL was the driver and sole occupant of a 2012 Honda Accord bearing California license plate 9XAS864 (the "Vehicle").

8.      During outbound inspection, ERDAHL said she had nothing to declare. The Customs and Border Protection ("CBP") Officer conducting inspection informed ERDAHL that she was required to report cash in excess of $10,000 USD and asked ERDAHL if she had more than $10,000 U.S. dollars ("USD"). ERDAHL gave a negative declaration and added that she wished she had that amount of money.

9.      ERDAHL and the Vehicle were referred to secondary inspection. There, a CBP Officer operating a Z-portal x-ray machine observed anomalies in the interior of the Vehicle's gas tank. CBP Officers inspected the gas tank and discovered nine vacuum-sealed plastic packages, containing stacked U.S. currency, floating in the gasoline.  As pictured below, each vacuum-sealed package appeared to be labeled with a number between one and nine and the aggregate amount of currency contained in all nine packages. Law enforcement seized the currency, subsequently determined to total approximately $131,680 USD.

*Nine Packages of Cash Seized from ERDAHL's Gas Tank*



***Records show ERDAHL registered and re-plated the Vehicle in February 2026, around the time she began driving it into the U.S. from Mexico***

10.    A review of California DMV records revealed that the Vehicle was registered to ERDAHL, at an address in Long Beach, California, on approximately February 9, 2026. DMV records further showed that the Vehicle's license plate was changed around the time of registration.

11.    Based upon my experience and training, and consultation with other law enforcement officers experienced in bulk-cash smuggling investigations, I know that individuals involved in cross-border smuggling will often register a vehicle used for smuggling in their name in advance of a smuggling event, in an effort to evade suspicion while crossing the border. I also know that individuals involved in cross-border smuggling will change the license plates on vehicles in order to evade detection by law enforcement.

12.    A review of border crossing records shows that the Vehicle, bearing the prior license plate, was first recorded crossing the international border between the United States

and Mexico outbound at the San Ysidro Port of Entry on December 15, 2025. On February 6, 2026, ERDAHL drove the Vehicle back into the United States. On February 14, 2026, the Vehicle exited the United States, still bearing the prior license plate. Then, on February 15, 2026, ERDAHL again drove the Vehicle into the United States, this time bearing the new license plate. Since February 15, 2026, the Vehicle has entered the United States through the San Ysidro Port of Entry approximately seven times, each time with ERDAHL as the driver and sole occupant.

### Seizure of the Subject Devices

13.    The **Subject Devices** were seized from the Vehicle on April 25, 2026. **Subject Device 1** was located on the driver's front seat, and **Subject Device 2** was found inside ERDAHL's purse, located on the passenger front seat.  ERDAHL identified the **Subject Devices** as belonging to her during her post-arrest interview.

14.    Based upon my experience and training, consultation with other law enforcement officers experienced in bulk-cash smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, email addresses, appointment dates, messages, pictures and other digital information are likely stored in the memory of the **Subject Devices**. Further, in light of the above facts and my experience and training, there is probable cause to believe that ERDAHL was using the **Subject Devices** to communicate with others in connection with the smuggling of bulk cash out of the United States. Further, from my training and experience, I know that bulk-cash smugglers may be involved in the planning and coordination of a bulk cash smuggling event prior to a smuggling event; such communications are generally necessary to coordinate times and locations to pick up vehicles loaded with bulk cash, for instance. Further, co-conspirators engage in communications during the smuggling event, to track the smuggler's progress. Often, if the smuggler is arrested, coconspirators do not learn of the arrest for some time and will continue to attempt communications, to determine the whereabouts of the bulk cash. (Based on my training and expeience, it is also not unusual for arrested individuals to minimize the amount of time they were involved in their

smuggling activities, and for the individuals to be involved for weeks and months longer than they claim.) In light of all the foregoing, I request permission to search the **Subject Devices** for data beginning on **February 6, 2026** [date of ERDAHL's first border crossing in the Vehicle] up to and including **April 25, 2026** [date of ERDAHL's arrest].

**D.    METHODOLOGY**

15.    It is not possible to determine, merely by knowing a cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16.    Following the issuance of this warrant, I will collect the **Subject Devices** and subject them to analysis. All forensic analysis of the data contained within the **Subject Devices** and their memory cards will employ search protocols directed exclusively to the

identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis **_within ninety (90) days_** of the date the warrant is signed, absent further application to this court.

**D.    PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

18. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**E.    CONCLUSION**

19. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Subject Devices** will yield evidence of Defendants' violations of Title 18, U.S.C., Sec. 371 and Title 31, U.S.C., Sec. 5332(a)(1) – Conspiracy to Bulk Cash Smuggle. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the device described in Attachments A-1 through A-2, and seize the items listed in Attachments B-1 through B-2 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Rae N. Ocampo
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 30th day of April, 2026.

Honorable Michael S. Berg
United States Magistrate Judge